Opinion by: Sandee Bryan Marion, Chief Justice
This is the third appeal in a dispute among attorneys over attorney's fees, which began with a product liability/wrongful death suit filed in 2005 and culminated in a 2008 directed verdict against Mark Cantu on the dispute over attorney's fees. Once again, the parties are before this court on a summary judgment rendered against appellant and in favor of appellees. We reverse the trial court's summary judgment in favor of appellees and remand the cause for further proceedings consistent with this opinion.
BACKGROUND
The background of this dispute is set forth in our prior opinions and will not be repeated here except as pertinent to this appeal. See Cantu v. Guerra & Moore, Ltd., LLP , 328 S.W.3d 1 (Tex. App.-San Antonio 2009, no pet.) (" Cantu I "); see also Cantu v. Guerra & Moore, Ltd., LLP , 448 S.W.3d 485 (Tex. App.-San Antonio 2014, pet. denied) (" Cantu II ").
Several years after the Cantu I court affirmed the 2008 judgment against Cantu, Cantu filed a petition for bill of review alleging recently-discovered evidence unknown to him in 2008 showed appellees conspired to defraud him of the legal fees he earned in the underlying product liability/wrongful death suit. Cantu also alleged appellees' efforts prevented him from fully litigating claims or defenses he might have asserted in the 2008 trial on attorney's fees. He argued the trial court's 2008 judgment against him should be set aside and a new trial held on his claim for attorney's fees. Appellees filed a motion for summary judgment on the ground that Cantu was not entitled to a bill of review, which the trial court granted. The Cantu II court reversed the summary judgment and remanded *667 the cause to the trial court. On remand and after additional discovery, appellees again moved for summary judgment on the ground that Cantu was not entitled to a bill of review. The trial court rendered summary judgment in appellees' favor, and this third appeal by Cantu ensued.
STANDARD OF REVIEW
We review the trial court's summary judgment de novo. Merriman v. XTO Energy, Inc. , 407 S.W.3d 244, 248 (Tex. 2013) ; Buck v. Palmer , 381 S.W.3d 525, 527 (Tex. 2012). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The movant bears the burden to show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Id. ; Katy Venture, Ltd. v. Cremona Bistro Corp. , 469 S.W.3d 160, 163 (Tex. 2015). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Id. (citing Henkel v. Norman , 441 S.W.3d 249, 250 (Tex. 2014) (per curiam)). Where, as here, the trial court's judgment does not specify the grounds, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. See Southwestern Bell Tel., L.P. v. Emmett , 459 S.W.3d 578, 587 (Tex. 2015) (quoting Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 216 (Tex. 2003) ).
LAW OF THE CASE DOCTRINE & EXTRINSIC FRAUD
After remand in Cantu II , appellees moved for summary judgment on the ground that Cantu's allegations in his bill of review amounted only to intrinsic fraud, which will not support a bill of review. In this appeal, Cantu relies on the law of the case doctrine to argue that once the Cantu II court determined he was not barred from seeking relief through a bill of review, the trial court had a duty to obey. According to Cantu, once an appellate court reverses a summary judgment, its ruling becomes the ruling of both courts and the lower court is bound by the appellate court's decision absent changed circumstances.
"Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." Briscoe v. Goodmark Corp. , 102 S.W.3d 714, 716 (Tex. 2003). The law of the case doctrine states as follows:
The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. The doctrine is based on public policy and is aimed at putting an end to litigation.
Id. (quoting Hudson v. Wakefield , 711 S.W.2d 628, 630 (Tex. 1986) ).
However, the doctrine only applies to questions of law and does not apply to questions of fact. Hudson , 711 S.W.2d at 630. Also, the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved in the first trial. Id. Therefore, we first determine whether the issues are substantially the same.
The Cantu II court first addressed appellees' argument that they were entitled *668 to summary judgment as a matter of law because the summary judgment evidence conclusively established Cantu alleged only intrinsic fraud. The court noted Cantu alleged appellees presented witnesses at trial who perjured themselves, and the court acknowledged perjury is intrinsic fraud. Cantu II , 448 S.W.3d at 491. However, the court also noted Cantu alleged
a conspiracy between Appellees, RG & B, and the plaintiffs' family members to defraud him out of his attorney's fees. In his subsequent investigation, he obtained affidavits from several of the alleged conspirators, and all confirmed the conspiracy with specificity. He learned that, in their efforts to defraud Cantu of his attorney's fees, Appellees conspired with RG & B, Javier Fuentes, Zacarias Gonzalez and his family members, and others to present witnesses to the court who would perjure themselves to benefit the conspiracy and prevent Cantu from presenting a defense. The conspirators, led by Appellees, promised to make-and made-cash payments to at least one party-witness (Zacarias Gonzalez); promised additional payments to at least one party-witness (Zacarias Gonzalez) and his other family members; and implied or stated that the wrongful death suit settlement could be at risk if the Gonzalez family did not assist Appellees and RG & B as requested. As another part of the conspiracy, RG & B agreed to pay G & M a portion of its fee. Cantu included a copy of a check for $300,000 from RG & B to one of G & M's partners.
Id. at 492.
The court concluded as follows:
Here, the summary judgment evidence raises genuine issues of material fact on whether Appellees' alleged deceptions prevented Cantu from presenting any claims or defenses on the specific plans, actions, and evidence of conspiracy, bribery, perjury, and coercion allegations he raised by his petition; whether he could have reasonably discovered these matters before trial or appeal ...; whether any claim or defense was, could have been, or should have been "presented to and considered by the [fact-finder] in rendering judgment," ...; and whether the judicial process was distorted "to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process [was] undermined" and Cantu was denied "the opportunity to fully litigate at trial all the rights or defenses that could have been asserted[.]" ... Therefore, we hold that Cantu's summary judgment evidence raises a genuine issue of material fact on whether Appellees committed extrinsic fraud, and summary judgment on this theory was not proper.
Id. at 495 (citations omitted).
Therefore, the Cantu II court reached a decision that governs this case in its subsequent stages-Cantu alleged extrinsic fraud, and not intrinsic fraud. Accordingly, the decision in Cantu II would bar re-litigation of the issues raised in appellees' first motion for summary judgment unless the issues or the facts presented in the motion for summary judgment on remand are not substantially the same as those involved in the first motion for summary judgment.
In both motions for summary judgment, appellees argued the following grounds: (1) perjured testimony is intrinsic fraud that will not support a bill of review, (2) a bill of review is not available if an appeal of the judgment was pursued, and (3) Cantu's unclean hands precludes relief as a matter *669 of law.[1] In their motion for summary judgment on remand, appellees argued for the first time that Cantu could not establish he relied on the alleged perjury, which, they contend, is an essential element of extrinsic fraud. As a result, with the exception of the reliance argument, the issues in this appeal are, not only "substantially the same as," they are identical to the issues considered in Cantu II . Nevertheless, in this appeal, appellees argue law of the case does not preclude their summary judgment because the record in this appeal differs from the record in Cantu II .
The Cantu II court noted the following with regard to the summary judgment evidence before it:
In his bill of review, Cantu petitioned the trial court to exercise its equitable powers and set aside its final judgment. The judgment shows Cantu litigated a conspiracy claim against [appellees], but it does not recite the bases for that claim-such as the specific actors, actions, and evidence considered by the trial court. Appellant and Appellees each characterize the conspiracy claim that was litigated, but we do not have the pleadings or transcripts before us. Because we are reviewing the trial court's grant of Appellees' motion, we are limited to the facts presented in the summary judgment evidence, ... and we must take Cantu's summary judgment evidence as true and make all reasonable inferences in his favor....
448 S.W.3d at 494 (citations omitted).
In this appeal from appellees' motion for summary judgment on remand, we have additional evidence not available to the Cantu II court-the original trial transcript, Cantu's deposition, and the deposition of one of Cantu's witnesses in which the witness stated he wanted to retract what he said in his earlier affidavit because many of his statements were not true. The premise of appellees' motion for summary judgment on remand was that appellees' alleged fraud or wrongful acts did not prevent Cantu from presenting his case. Further, appellees argued that additional post-remand discovery revealed Cantu's perjury and conspiracy claims all arose from a May 1, 2007 meeting at appellees' offices in McAllen, Texas. Appellees contend that, in their post-remand depositions, Jesse and Zacarias Gonzales stated they were told at this meeting to tell "a little white lie" about what Cantu told them to cause them to initially terminate appellees' representation and retain Cantu. Appellees contend that after extensive post-remand discovery, Cantu's claim boils down to one meeting, one alleged conspiracy, and one alleged lie. Because what Cantu allegedly said to the Gonzalez family was an integral part of the underlying trial, appellees argued in their motion for summary judgment on remand, that the issue was whether the specific plan and/or scheme to make this specific statement was known to Cantu at trial and, therefore, already litigated. Appellees asserted that because the claims were fully litigated at a week-long jury trial in 2008, Cantu's bill of review claims constitute intrinsic fraud and his bill of review should be dismissed.
We have reviewed the evidence relied on by appellees in their motion for summary judgment on remand, and we conclude the evidence raises additional fact questions on whether appellees actually committed fraud-questions that are not before us. However, the evidence does not change the *670 basis of the ruling in Cantu II , which was that Cantu's allegations regarding appellees' alleged conspiracy, bribery, perjury, and coercion, if proven, amounted to allegations of extrinsic fraud as a matter of law. Therefore, we conclude Cantu II 's ruling is law of the case and summary judgment on the ground that Cantu's allegations amounted to intrinsic fraud was improper.
RELIANCE
In their second motion for summary judgment, appellees asserted reliance is an element of fraud, and Cantu cannot establish this "essential element" of his extrinsic fraud claim. We disagree with the premise of appellees' argument. A bill of review petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident or wrongful act of his opponent, and (3) the petitioner was not negligent. King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 751-52 (Tex. 2003). As the court in Cantu II stated, Cantu's summary judgment evidence raised a fact issue on whether appellees' fraud, alleged conspiracy, and deceptions prevented him from presenting a meritorious defense. Cantu II , 448 S.W.3d at 494-95. Again, whether Cantu can prove appellees engaged in fraud, deceptions, or a conspiracy is for the fact-finder to decide, and not this court in this appeal.[2] Therefore, we conclude summary judgment on the ground that Cantu was required, but failed, to prove reliance was improper.
ISSUES ALREADY LITIGATED AND APPEALED
A bill of review may not be used as an additional remedy after one has made a timely but unsuccessful appeal. Rizk v. Mayad , 603 S.W.2d 773, 776 (Tex. 1980). Appellees argued in both motions for summary judgment that because Cantu was unsuccessful in his first appeal, he could not seek a bill of review. The court in Cantu II held
Cantu raised a genuine issue of material fact on whether he was prevented by Appellees' alleged deception from presenting the specific plans, actions, and evidence of the conspiracy, fraud, perjury, and coercion defense he raised in his petition for bill of review. Cantu also raised a fact issue on whether he was only able to discover Appellees' misconduct years after the Gonzalez wrongful death suit ended, and he could not have previously presented the specific plans, actions, and evidence he proffered in his petition. Thus, Cantu has raised genuine issues of material fact on whether he is seeking an additional review of the specific elements and evidence of conspiracy, fraud, perjury, and coercion that were, or could have reasonably been, already litigated and appealed.... Therefore, the trial court could not have properly granted Appellees' motion for summary judgment on this theory.
Cantu II , 448 S.W.3d at 496.
In their motion for summary judgment on remand, appellees asserted their evidence conclusively established Cantu litigated his only "alleged plan or scheme in the prior trial"; therefore, he was not entitled to a bill of review as an additional remedy. For the reasons stated above in our discussion of whether Cantu II is law of the case on the question of whether Cantu's allegations rise to the level of extrinsic fraud, we likewise conclude *671 Cantu II remains the law of the case on this issue and summary judgment on this ground was improper.
UNCLEAN HANDS
Finally, appellees moved for summary judgment under the doctrine of unclean hands, which may bar a party from obtaining equitable relief. The defense of unclean hands derives from the equitable principle that the party seeking equity must come into court with clean hands. Truly v. Austin , 744 S.W.2d 934, 938 (Tex. 1988). The party claiming unclean hands bears the burden of showing it was injured by the other party's unlawful or inequitable conduct. Park v. Escalera Ranch Owners' Ass'n, Inc. , 457 S.W.3d 571, 597 (Tex. App.-Austin 2015, no pet.). The doctrine should not be applied unless the party claiming unclean hands has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine. Id.
In their motion for summary judgment on remand, appellees alleged the following regarding Cantu's unlawful or inequitable conduct:
[T]his lawsuit was a scheme orchestrated by Cantu to bring a lawsuit he knew to be a scam, and not factually supported by the evidence. This case is motivated by nothing more than revenge. In fact, Cantu pressured Fuentes and several of the Gonzalez family members to sign affidavits which Cantu prepared and to which Cantu added various "facts" which were not true.
Regarding how they were harmed by Cantu's alleged conduct, appellees submitted the affidavit of their attorney, which stated as follows:
I am the attorney for [appellees], and have been so since the inception of this case. I was the lead attorney trying the underlying case of which Cantu complains. I am personally familiar with the proceedings at trial, appeal, and post-trial in this case. ... [Appellees have] spent over $150,000.00 defending against this lawsuit. This amount includes attorney's fees, appellate fees, costs to conduct discovery and attorney time. [Appellees have] been seriously harmed by Cantu's filing of the bill of review.
Appellees' allegations that Cantu has unclean hands are based, in large part, on the same allegations they raised to defeat his entitlement to equitable relief in a bill of review. These same fact issues also defeat appellees' entitlement to summary judgment under the doctrine of unclean hands. Because we conclude Cantu is entitled to pursue his bill of review, we cannot say appellees' attorney's fees incurred in preventing Cantu from seeking relief amounts to serious harm. Therefore, summary judgment on this ground was improper.
CONCLUSION
Because the holding in Cantu II that Cantu's allegations, if proven, constitute extrinsic fraud is law of the case, the trial court erred in rendering summary judgment in appellees' favor based on appellees' arguments that Cantu alleged only intrinsic fraud and that he was not entitled to a bill of review on issues already litigated and appealed. We conclude appellees did not conclusively establish their defense of unclean hands as a matter of law. Finally, we conclude genuine issues of material fact preclude summary judgment in appellees' favor based on their argument that Cantu could not show he relied on any alleged perjury. For these reasons, we reverse the trial court's summary judgment in appellees' favor and remand the cause to the trial court for further proceedings.
*672 JUDGMENT
In accordance with this court's opinion of this date, the trial court's October 12, 2016 Order Granting Respondents' Motion for Summary Judgment is REVERSED and the cause is REMANDED for further proceedings.
It is ORDERED that appellant recover his costs of this appeal from appellees.

The original motion for summary judgment raised a fourth ground, which was that there was a fatal defect to any conspiracy claim. This ground was abandoned and not considered by the Cantu II court, and was not a ground for relief in appellees' motion for summary judgment on remand.

We make no decision as to whether reliance is an element that must be established in a bill of review.