

# NUMBER 13-24-00362-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE SONIA TREVINO

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Tijerina[1]**

By petition for writ of mandamus, relator Sonia Trevino contends that the trial court[2]

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-2855-24-E in the 275th District Court of Hidalgo County, Texas, and the respondent, sitting by appointment, is the Honorable Jose Manuel Bañales. *See id.* R. 52.2.

abused its discretion by disqualifying her lead counsel of record, Ricardo L. Salinas, in an election contest. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

In the May 28, 2024 Democratic Primary Run-Off Election, Trevino won re-election to be the Democratic nominee for Justice of the Peace of Hidalgo County, Precinct 3, Place 1. The only other candidate in the race, real party in interest Ramon Segovia, filed an election contest challenging the results of the election. According to Segovia, Trevino was declared the winner of the race because she received thirty-one more votes than he did, but "this was not the true outcome of the election." Segovia alleged that numerous votes were illegally cast: (1) by individuals who were registered to vote at an address that was not a residence or not their residence; and (2) by voters who were assisted at the time they voted even though they were not eligible for assistance in reading or completing the ballot, or they did not request assistance and persons other than the voter selected the person providing assistance, or they received assistance that was not limited to that authorized by the Texas Election Code at a polling place. Segovia further alleged that that numerous mail-in ballots should not have been counted because they violated election code requirements. Segovia also contended that numerous voters were unlawfully allowed to engage in curbside voting, that numerous voters unlawfully voted curbside with campaign workers present in their vehicles, and that many of the campaign workers did not take the appropriate oath and did not sign the required forms before serving as voting assistants. Segovia alleged that the number of illegal votes cast in the election exceeded the difference in the total number of votes cast for both candidates;

2

thus, he urged the trial court to declare the election void and order a new election.

In response, Trevino filed a combined pleading consisting of a plea to the jurisdiction, a general denial, special exceptions, a request for disclosures, and a request for sanctions. She alleged, in relevant part, that votes for Segovia were illegally counted, and that all of her lawful votes were not counted, and therefore her election was valid.

Trial in this case commenced on July 15, 2024. On the afternoon of July 18, 2024, Segovia testified. On direct examination, Segovia's counsel questioned him about various individuals who allegedly provided assisted votes in the election. Segovia testified, for instance, regarding whether he knew specific individuals and whether they worked for his campaign or Trevino's. Salinas then began cross-examining Segovia. Segovia testified that he had met with some of his supporters at a construction trailer that he owned. He admitted that he gave money to some of his supporters, but he denied that he told them to assist people to vote for him and denied that his campaign funds were used for assisting voters. Salinas's questions turned to Segovia's financing for the race, and the following colloquy occurred:

| SALINAS: | Well, didn't you find it out of your own mouth, Mr. Segovia, didn't you go out and reach to the other runoff candidates to help you financially with your race? |
| --- | --- |
| SEGOVIA: | Out of my own mouth? |
| SALINAS: | Yes, out of your own mouth. |
| SEGOVIA: | How do you know that? |
| SALINAS: | Well, because I was there. |
| SEGOVIA: | So you're a witness in this case? |

3

SEGOVIA'S COUNSEL:    Hold on, Your Honor.

. . . .

SEGOVIA'S COUNSEL:    The mistake that Mr. Salinas made just right now, he's identified as a witness in this case, Your Honor, on the line of questioning that he's got and I will at this time, Your Honor, because he's a witness. He just admitted as being a witness in this case and I would ask that he be disqualified from proceeding in this case.

He's already said I was there at that meeting and he's asking him about a meeting that he believes is relevant to the issues that they were discussing. He's made himself a witness, Your Honor. And as a witness, because now he cannot at this point continue as an attorney in this case.

The trial court asked Salinas how he wished to respond to the issue regarding disqualification. Salinas opposed his disqualification, and stated that he heard public "speeches that were being made while [Segovia] was trying to solicit contributions," and affirmatively denied that he had knowledge of any relevant facts. The discussion continued:

SEGOVIA'S COUNSEL:    If I may, Your Honor, what he was questioning about was that, and apparently he's making this part of his case because why else would he be asking about it, he was questioning him about whether or not Mr. Segovia had asked other candidates to help him in his campaign. And when Mr. Segovia said that didn't happen, Mr. Salinas—

SALINAS:    No, I'm going to object because that's not what he said.

SEGOVIA'S COUNSEL:    If I may, Your Honor.

4

| | |
|---|---|
| THE COURT: | Let him finish. |
| SEGOVIA'S COUNSEL: | When Mr. Segovia responded to him about what he was asking him Mr. Salinas said I was there. So if it is relevant to the issues in this case for him to be asking about this meeting about where he claimed he was soliciting money, I personally don't understand why it's relevant, but for some reason Mr. Salinas thinks it's relevant, then he [] was a witness to the fact that he has made relevant in this case and as an attorney he is therefore automatically disqualified, if the Court agrees, from proceeding any further in this case. He has made that an issue in this case. |

Salinas further argued that he should not be disqualified because he merely heard Segovia "making open public statements to people." However, the trial court rejected Salinas's arguments and ruled that Salinas had "injected [himself] into this case as a fact witness and [he was] disqualified as a lawyer in this case."

Salinas objected to the trial court's ruling and requested the trial court to allow him to make a bill of exception.[3] During his bill, he testified that he was attempting to impeach Segovia "regarding testimony that [he didn't] believe was honest." Salinas asserted that he did not "know anything of any substantive facts," that he did not "believe [he] should be disqualified," and that he takes trial court proceedings and his oath as a judicial officer seriously.

Subsequently, Trevino filed this petition for writ of mandamus and an emergency

---

[3] *See* TEX. R. APP. P. 32.2. ("To complain on appeal about a matter that would not otherwise appear in the record, a party must file a formal bill of exception."); TEX. R. EVID. 103(c) ("The court must allow a party to make an offer of proof as soon as practicable.").

motion for stay of the trial court proceedings. This Court granted Trevino's emergency motion, stayed the trial court proceedings, and requested Segovia to file a response to the petition for writ of mandamus. Segovia's response has been duly filed, and Trevino has filed a reply.[4]

## II. MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

When a trial court abuses its discretion by granting a motion to disqualify counsel, appeal is an inadequate remedy. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding); *In re Turner*, 542 S.W.3d 553, 555 (Tex. 2017) (orig. proceeding) (per curiam); *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (orig. proceeding) (per curiam); *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004)

---

[4] Segovia has also filed a "Motion to Expedite a Decision on Petition for Writ of Mandamus or Motion to Partially Lift Stay of Trial Court Proceedings." Given our disposition of this original proceeding and the timing thereof, we deny all relief sought in Segovia's motion as moot.

(orig. proceeding) (per curiam); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (orig. proceeding). Consequently, the "pertinent inquiry" is whether the trial court abused its discretion by disqualifying lead counsel. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam).

### III.   DISQUALIFICATION

"Disqualification of counsel is a severe remedy that can result in significant expense to clients, disrupt the orderly progress of litigation, and deprive a party of the counsel of its choice." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 129 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). "Disqualification can delay proceedings in the trial court, require the client to engage a successor attorney, and, in appropriate cases, deprive the client of work product done on his behalf by the disqualified attorney." *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. "To prevent the abusive filing of such a motion for tactical reasons, the court must carefully evaluate the motion and record to determine if disqualification is warranted." *Id.*; *see In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. Courts thus must apply an exacting standard in ruling on disqualification motions. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *Spears v. Fourth Ct. of Apps.*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding).

The Texas Disciplinary Rules of Professional Conduct do not set the standard for disqualification; however, they "provide helpful guidance" and "suggest the relevant considerations." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57 (quoting *Nat'l Med.*

7

*Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996) (orig. proceeding)); *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. We consider all of the facts and the circumstances of the case in determining whether disqualification is warranted. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57.

### IV. LAWYER AS WITNESS

Salinas's disqualification is premised on Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, which provides in relevant part:

(a)    A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

   (1)    the testimony relates to an uncontested issue;

   (2)    the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

   (3)    the testimony relates to the nature and value of legal services rendered in the case;

   (4)    the lawyer is a party to the action and is appearing pro se; or

   (5)    the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A.

"The fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification." *In re Sanders*, 153 S.W.3d at 57; *see Love v. State*, 600 S.W.3d

8

460, 476 (Tex. App.—Fort Worth 2020, pet. ref'd); *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d 747, 750–51 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding). The party seeking disqualification must establish that the lawyer's testimony is "necessary to establish an essential fact." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a); *see In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476; *In re Reeder*, 515 S.W.3d 344, 354 (Tex. App.—Tyler 2016, orig. proceeding); *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 750. The party requesting disqualification must also demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice. *In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476; *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 751.

## V. CLEAN HANDS

First, Segovia contends that Trevino lacks clean hands, thus preventing mandamus relief, because "this problem was created by [Salinas's] wholly inappropriate comment and declaration to be a witness." The equitable doctrine of unclean hands may defeat the right to mandamus relief. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 552 n.2 (Tex. 1990) (orig. proceeding); *In re D.D.*, 661 S.W.3d 608, 618 (Tex. App.—El Paso 2023, orig. proceeding); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding). "The defense of unclean hands derives from the equitable principle that the party seeking equity must come into court with clean hands." *Cantu v. Guerra & Moore, LLP*, 549 S.W.3d 664, 671 (Tex. App.—San Antonio 2017, pet. denied) (citing *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). "The doctrine is applied to one whose own conduct in connection with the same matter or transaction

9

has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi–Edinburg 1994, no writ); *see In re D.D.*, 661 S.W.3d at 618; *Wood v. Wiggins*, 650 S.W.3d 533, 556 (Tex. App.—Houston [1st Dist.] 2021, pet. denied); *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 899. Whether to apply the doctrine of unclean hands is committed to the court's discretion. *Wood*, 650 S.W.3d at 556; *Reich & Binstock, LLP v. Scates*, 455 S.W.3d 178, 184 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 899. "The clean hands maxim should not be applied when the defendants have not been seriously harmed and the wrong complained of can be corrected without applying the doctrine." *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 899; *see Wood*, 650 S.W.3d at 556; *Cantu*, 549 S.W.3d at 671.

Here, the record before the Court does not indicate that Salinas's conduct in cross-examining Segovia was unconscientious, unjust, or marked by a want of good faith. *See In re D.D.*, 661 S.W.3d at 618; *Wood*, 650 S.W.3d at 556; *Thomas*, 882 S.W.2d at 880. And, even if we were to conclude otherwise, Segovia does not contend that he has been seriously harmed or that any harm cannot be corrected without applying the unclean hands doctrine. *See Wood*, 650 S.W.3d at 556; *Cantu*, 549 S.W.3d at 671. Thus, we are not persuaded that the doctrine of "unclean hands" should bar Trevino from petitioning this Court to issue a writ of mandamus to correct an alleged abuse of discretion in disqualifying counsel.

## VI.    PRESERVATION OF ERROR

Segovia further asserts that Trevino waived any error by failing to properly object to the Court's ruling on disqualification. We disagree. After the trial court determined that Salinas was "disqualified as a lawyer in this case," Salinas immediately stated that he "would object" and he requested the trial court to allow him to make a bill of exception. Following the bill of exception, the trial court reiterated its ruling. The record thus establishes that Salinas preserved this alleged error for our review. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion."); *Browder v. Moree*, 659 S.W.3d 421, 423 (Tex. 2022) (per curiam) ("A party preserves error by a timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit.") (quoting *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011)); *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) (orig. proceeding) ("As a rule, mandamus is not available to compel an action which has not first been demanded and refused."). We thus turn our attention to the merits of the disqualification.

## VII.    ANALYSIS

Trevino asserts by one issue that the trial court abused its discretion by disqualifying Salinas as the "lead counsel in the middle of the pending trial." She contends that even if Salinas "was a witness to certain statements made by Segovia at a meeting," "these statements were not 'essential facts' in this election contest" and that Segovia failed to show that Salinas's role as attorney and possible witness would cause him actual

11

prejudice. Trevino further asserts that there is no risk of the factfinder being confused because the election contest is being tried to the bench rather than a jury. Under an exacting standard of review, we examine whether Segovia met his burden to establish that Salinas's testimony is necessary to establish an essential fact and that Salinas's dual role as attorney and witness in this case will cause Segovia actual prejudice. *See In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476.

We conclude that Segovia has not met his burden to establish either criterion. First, Segovia has offered neither argument nor evidence that Salinas's potentially dual role in the case would cause him actual prejudice. *See In re Sanders*, 153 S.W.3d at 57; *Shaw v. Lemon*, 427 S.W.3d 536, 543 (Tex. App.—Dallas 2014, pet. denied). Segovia contends that Trevino will not be unduly prejudiced by Salinas's disqualification because Trevino "has other competent counsel representing her" in the election contest; and that "even before being disqualified, [Salinas] had not participated in [ninety] percent of the proceeding, failing to question even one of the fifty plus voters who have been called to testify, leaving the trial of the case to [Trevino's] two [other] well[-]qualified attorneys to try the case." We agree that the presence of other counsel could in certain circumstances ameliorate the prejudice suffered by the nonmovant when counsel is disqualified; however, that is not the linchpin of our analysis. *See In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57 (considering the prejudice to the nonmovant upon disqualification as well as the prejudice to the movant if counsel is not disqualified). Segovia was required to establish that Salinas's alleged dual role will cause him actual prejudice. *See In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476. However, Segovia did not explain

12

or offer any evidence that Salinas's participation in this case as an advocate and a potential witness would actually cause *Segovia* actual prejudice. *See In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476; *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 751.

Second, Segovia has not established that Salinas's testimony is necessary to establish an essential fact in this case. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a); *In re Sanders*, 153 S.W.3d at 57; *Love*, 600 S.W.3d at 476. In this regard, Segovia contends that Trevino raised the issue of Segovia's finances as a "big issue" in this election contest, and that Salinas's comments have created an issue of fact as to the existence of a critical meeting allegedly designed to raise money to "illegally assist voters." According to Segovia, Salinas "announced in open court" that he was a witness on the essential fact that the meeting occurred. Segovia further alleged that Trevino failed to identify any other witnesses who would testify regarding this meeting, whether in Salinas's bill of exception or otherwise.

As the movant for disqualification, Segovia has the "significant burden" to explain why Salinas's testimony is necessary to establish an essential fact in the case. *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 752. Segovia has not met this burden. In fact, Segovia's counsel expressly queried the relevance of the meeting by stating that he "personally [didn't] understand why it's relevant." Segovia makes no showing that Salinas's testimony is necessary or essential to determining the claims before the court. Further, even assuming the occurrence of the meeting was an essential fact, Segovia misstates the burden of proof regarding whether Salinas's testimony was necessary to establish that fact. It was not Trevino's burden to identify other witnesses who would be able to testify

13

regarding these matters; rather, it was Segovia's burden to explain why other sources would be insufficient to establish those facts. *See In re Sanders*, 153 S.W.3d at 57 (holding that a movant's failure to explain why other sources were insufficient resulted in a failure to show the necessity of the attorney's testimony); *see also In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 752; *In re Garza*, 373 S.W.3d 115, 118 (Tex. App.—San Antonio 2012, orig. proceeding). Thus, the record does not support the conclusion that testimony from Salinas is "necessary to establish an essential fact" or that any party genuinely needs his testimony. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a); *In re Sanders*, 153 S.W.3d at 56; *In re Garza*, 373 S.W.3d at 118.

The Texas Supreme Court has repeatedly advised us that disqualification is a "severe" remedy, and we must apply an "exacting" standard of review to rulings disqualifying counsel. *See, e.g., In re Thetford*, 574 S.W.3d 362, 373 (Tex. 2019) (orig. proceeding); *In re RSR Corp.*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding) (per curiam); *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422; *Spears*, 797 S.W.2d at 656. Applying this standard of review, we hold that the trial court abused its discretion in disqualifying Salinas.

## VIII.    CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that Trevino has met her burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See id.* R. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant the petition for writ of mandamus,

14

and we direct the trial court to vacate its order granting the motion for disqualification and to enter an appropriate order denying such motion. Our writ will issue only if the trial court fails to promptly comply.

JAIME TIJERINA
Justice

Delivered and filed on the
24th day of July, 2024.